**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**


| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 8-CR-22-GKF |
| | ) Case No.   11-CV-610-GKF-PJC |
| KIMBERLY CHANCELLOR, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## OPINION AND ORDER

Before the court is defendant Kimberly Chancellor's ("Chancellor") Motion under U.S.C.

§ 2255 to Vacate, Set Aside or Correct a Sentence by a Person in Federal Custody.  [Dkt. #102].

The United States of America objects to the motion.  [Dkt. #121].

Chancellor contends his trial counsel was ineffective for (1) failing to object to Jury

Instruction Nos. 19, 24 and 29; and (2) failing to contact, interview and call as a witness Rebecca

Ballard, who Chancellor contends was present at the time of the attempted rape of victim C.A.,

which is the subject of Count II of the indictment.

### I. Background/Procedural Status

On February 6, 2008, a Federal Grand Jury returned an Indictment charging Chancellor

with one count of Attempted Aggravated Sexual Abuse of a Minor in Indian Country and one

count of Aggravated Sexual Abuse of a Minor in Indian County in violation of 18 U.S.C. § 1151,

1153, 2241(c) and 2246(2)(A-D).  [Dkt. #2].  On April 8, 2008, a Federal Grand Jury returned a

Superseding Indictment charging Chancellor with one count of Aggravated Sexual Abuse of a

Minor in Indian Country and two Counts of Attempted Aggravated Sexual Abuse of a Minor in

Indian Country, again in violation of 18 U.S.C. § 1151, 1153, 2241(c) and 2246(2)(A-D). [Dkt. #6]. A jury convicted him of all three counts of the Superseding Indictment on July 29, 2008. [Dkt. #59]. On November 13, 2008, the court entered a Judgment and Commitment, sentencing Chancellor to life in prison on each count, to be serviced concurrently. [Dkt. #61].

The Tenth Circuit, on direct appeal, affirmed Chancellor's conviction and sentence. [Dkt. #98]. Chancellor's petition for writ of certiorari was denied on October 4, 2010. [Dkt. #101]. Chancellor filed his § 2255 motion on October 3, 2011. [Dkt. #102].

## II. Relevant Facts

## A. Witness Testimony

### 1. A.D.F.

Count One of the indictment, for Aggravated Sexual Abuse of a Minor in Indian Country, was based on the rape of A.D.F., a friend of Chancellor's young daughter, K.R.H. At trial, A.D.F. testified that in the summer of 2003, when she was 11 years old, she spent the night at the home of K.R.H., a neighborhood friend. [Dkt. #81, Jury Trial Tr., 35:17-36:14]. K.R.H.'s father, Chancellor, was present in the home. [*Id.*, 36:21-25]. A.D.F. testified that at some point during the night, she awoke and went to the restroom. [*Id.*, 37:20-38:1]. Chancellor came into the bathroom while A.D.F. was sitting on the toilet. [*Id.*, 38:3-5]. When A.D.F. stood up, Chancellor pushed her to the floor and raped her. [*Id.*, 38:5-20]. After Chancellor raped her, he stood up and walked out of the bathroom. [*Id.*, 39:2-4]. A.D.F. continued to lie on the floor of the bathroom because she could not move. [*Id.*, 39:5-6]. She was hurt and bleeding. [*Id.*, 39:7-12]. Eventually, she pulled herself up from the floor, went home and took a shower. [*Id.*, 3915-17]. A.D.F. did not report the rape or disclose that it had occurred to K.R.H. or anyone else until

about five years later, when federal and tribal investigators contacted her about the investigation of Chancellor.  [*Id.,* 42:14-43:3].

## 2. C.A.

Count Two, for Attempted Aggravated Sexual Abuse of a Minor, arose from an incident in 2006 during which Chancellor attempted to rape C.A., a minor.   C.A. testified that during the late evening hours of December 31, 2006, she was at the home of Chancellor's mother.  [*Id.,* 46:1-10].  C.A. was served and drank beer there.  [*Id.,* 46:13-14].  At some point during the night she was taken to Chancellor's house, where she fell asleep on a bed. [*Id.,* 46:15-20].  Later, she woke up and realized someone was on top of her.  [*Id.,* 46:21-23].  C.A. testified she heard screaming, woke up and pulled her pants up and buttoned them, then saw Chancellor running out the door.  [*Id.,* 47:2-4].  She felt a liquid in her lower private regions, which she thought was unusual.  [*Id.,* 47:13-21].  She testified she could not have urinated on herself because the rest of her pants were not wet.  [*Id.,* 54:12-18].  C.A. then returned home and took a shower.  [*Id.,* 47:24-25, 49:17-21].  She felt soreness in her lower private parts.  [*Id.,* 49:24-50:2].  C.A. did not give Chancellor permission to have sex with her.  [*Id.,* 50:5-7].  She never went inside Chancellor's house again.  [*Id.,* 48:1-4].

K.R.H., Chancellor's daughter, testified that on or around December 31, 2006, she saw Chancellor on top of C.A., attempting to rape or raping C.A.  [*Id.,* 70:10-20; 76:6-17].  C.A.'s pants were off and Chancellor's body was "going up and down on her, moving around." [*Id.,* 76:13-17].

## 3. K.R.H.

Count Three, for Attempted Aggravated Sexual Abuse of a Minor in Indian Country, arose from Chancellor's attempted rape of his daughter, K.R.H., in May 2007.  K.R.H.

testified that on the night of May 20, 2007, she was at her home with Chancellor and his girlfriend, Janet Wells. [*Id.,* 64:4-6]. She was 14 years old at the time. [*Id.,* 62:23-24, 65:4-6]. She awoke to find her father crawling onto her bed. [*Id.,* 66:14-18]. He was not wearing any clothes. [*Id.,* 66:19-223]. She could see his penis; he had an erection. [*Id.,* 67:9-13]. When Chancellor crawled into bed with K.R.H., he tried to touch her breasts over her shirt. [*Id.,* 67:17-23]. K.R.H. tried to fight him off, hitting and kicking him and trying to pull him off. [*Id.,* 67:24-68:7]. Chancellor attempted to pull her pants down and touch her vagina. [*Id.,* 68:8-19]. K.R.H. scooted away from him until she was up against the wall. [*Id.,* 68:22-69:1]. Chancellor made a weird face, got closer and closer to her, and moved his penis against her lower private region through her pants. [*Id.,* 69:5-14]. Janet Wells came into the bedroom and tried to get Chancellor to go back to sleep. [*Id.,* 76:23-24]. Chancellor came into K.R.H.'s bedroom again later in the night and attempted again to have sex with K.R.H. [*Id.,* 69:25-70:7]. He threatened K.R.H. that if she ever told anyone about what had happened he would kill one of her pet dogs. [*Id.,* 70:21-71:10]. The next morning, Chancellor, who was sitting in the living room, masturbated in front of K.R.H. and Janet Wells and asked if they would help him. [*Id.,* 79:10-80:4].

Janet Wells, Chancellor's girlfriend at the time of the incident at issue, testified she spent the night of May 20-21, 2007, at Chancellor's house. [*Id.,* 83:15-20]. Wells was sleeping in the house and was awakened by Chancellor, who was in the bathroom pounding on the walls and stating he wanted K.H.M. [*Id.,* 84:21-85:2]. Chancellor, who was naked, then walked into K.R.H.'s bedroom, laid on the bed with K.H.M., and penned her up against the wall. [*Id.,* 85:5-14]. Wells saw him move his body against K.R.H. in a humping motion, as if he were trying to have sex with her. [*Id.,* 85:15-86:2]. K.R.H. was slapping him, trying to fight him off. [*Id.,* 86:6-13]. Wells tried unsuccessfully to persuade Chancellor to leave the bedroom. [*Id.,* 86:14-

18].  He went to sleep and Wells got K.R.H. out of the bedroom and took her into the living room.  [*Id.,* 86:19:23].  The next morning, Chancellor came into the living room naked, laid on the couch, asked Wells to have sex with him, then masturbated in front of Wells and K.R.H. [*Id.,* 87:6-23].  He was laughing.  [*Id.,* 87:24-25].  Later he threatened to kill Wells if she ever did anything to make him lose his daughter.  [*Id.,* 88:9-14].  Wells called an attorney who worked with children to report the incident.  [*Id.,* 88:15-22].

### 4. Deputy U.S. Marshal Hunt

Deputy United States Marshal Chad Hunt testified that after the grand jury returned an indictment against Chancellor on February 6, 2008, he fled.  [*Id.,* 98:16-99:7].  Hunt contacted an investigator with the Cherokee Nation Marshal Service and began collecting information on Chancellor's potential whereabouts.  [*Id.,* 99:7-10].  On February 23, 2008, authorities learned he had been arrested by the Pryor Police Department for public intoxication and released shortly thereafter the same day.  [*Id.,* 199:14-21].  They also learned Chancellor had been bonded out by a relative, Donna Cooper, who took him to the Tulsa Greyhound bus station, where he purchased a ticket to Dallas.  [99:23-100:5]. He arrived in Dallas that evening.  [*Id.,* 100:5-9].  He contacted the U.S. Marshals Service in Dallas and told them that it was believed Chancellor was staying at a homeless shelter somewhere in that city.  [*Id.,* 100:18-21].  On March 11, 2008, Chancellor was located and apprehended on a park bench outside a homeless shelter in a business district in Dallas.  [*Id.,* 101:3-7].

**B. Jury Instructions**

During its case-in-chief, the government read all of the joint stipulations to the jury, including the stipulation that Chancellor's home was located in Indian Country. [*Id.,* Dkt. #81, Trial Tr., 33:12-34:9].

Subsequently, the court instructed the jury about the elements of the crimes charged and the parties' joint stipulations in jury instructions 19 (Count One), 24 (Count Two) and 29 (Count Three). [Dkt. #58]. With respect to each of the three counts, the court instructed the jury that the fifth element the United States was required to prove beyond a reasonable doubt was that "[t]he offense was committed in Indian Country, at Salina, Oklahoma, in the Northern District of Oklahoma." [*Id.,* Jury Instruction Nos. 19, 28]. The court further instructed the jury:

> As to the fifth element of this offense, you are further instructed that the United States and the defendant have stipulated that the residence of the defendant is within Indian Country located in the Northern District of Oklahoma. You may thus accept the fifth element as being proved.

[*Id.*].

**C. 10th Circuit Appeal**

On direct appeal to the Tenth Circuit, Chancellor argued the district court erred in its jury instructions because "'[b]y telling the jury they must accept the fifth element as being proved (which contains the language '[t]he offense was committed…"), the jury was instructed that the criminal offenses did in fact occur.'" [Dkt. #98 at 3-4]. Chancellor also argued the evidence was insufficient to sustain his conviction due the lack of physical evidence and because the witnesses lacked credibility. [*Id.* at 6]. Additionally, he asserted the district court erred in instructing the jury "that they could consider the evidence that Mr. Chancellor left as consciousness of guilt." [*Id.* at 7].

The Tenth Circuit affirmed Chancellor's conviction on all counts. Regarding jury instructions, it concluded:

> Viewing the instructions as a whole, we see no error—structural or plain—in the disputed jury instructions." [*Id.* at 5]. … The instructions did not t[ell] the jury Mr. Chancellor was guilty nor did they otherwise contain a command to the jury that they must accept that the offenses were true. Quite the contrary, each disputed instruction charged the jury with determining *each* element of the offense beyond a reasonable doubt, including whether the offense occurred in the first instance.

[*Id.* at 5] (quotations and citations omitted).

With respect to the sufficiency of the evidence, the court concluded, "Because we are not free to weigh the credibility of witnesses whose testimony is not inherently incredible, [the defendant's sufficiency of the evidence] challenge fails as a matter of law, and we need not analyze the elements of each conviction or point out the overwhelming evidence in the record supporting them." [*Id.* at 7] (quotation and citation omitted).

Finally, regarding the court's jury instruction about Chancellor's departure to Dallas, the appellate court found, "Because Mr. Chancellor's departure from his home in Oklahoma to live on the streets of Dallas, Texas occurred at the same time that law enforcement began investigating him and notifying his acquaintances that Mr. Chancellor was facing charges, consciousness of guilt was a permissible inference to be drawn from his flight," and the district court "correctly cautioned the jury that it was up to them to determine whether the evidence proved flight and the significance, if any, to be accorded such a determination." [*Id.* at 8-9] (citing *United States v. Kennard,* 472 F.3d 851, 855 (11th Cir. 2006)).

## II. Standard of Review of Ineffective Assistance of Counsel Claims

To prevail on an ineffective-assistance claim under *Strickland v. Washington*, 466 U.S. 668 (1984) Montgomery must establish two elements: "First, he must show that [his] counsel

'committed serious errors in light of prevailing professional norms such that his legal representation fell below an objective standard of reasonableness.'" *Wackerly v. Workman,* 580 F.3d 1171, 1176 (10th Cir. 2009) (quoting *Castro v. Ward,* 138 F.3d 810, 829 (10th Cir. 1998)) (internal quotation marks and accompanying citation omitted). "Second, [he] must show that this deficient performance mattered—namely, that there is 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.,* (quoting *Strickland,* 466 U.S. at 688).

Judicial scrutiny of counsel's performance must be highly deferential. *Strickland,* 466 U.S. at 689. In addressing an ineffectiveness claim, a court "must judge the reasonableness of counsel's challenged conduct," and determine whether, in light of all the circumstances, the acts and omissions identified by the defendant were "outside the wide range of professionally competent assistance." *Id.* at 690. In so doing, the court "should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable judgment." *Id.*

### III. Analysis

Chancellor contends his trial counsel, Todd Hembree, was ineffective for (1) failing to object to jury instruction Nos. 19, 24 and 29 and (2) failing to investigate and interview a potential witness, Rebecca Ballard, regarding the attempted rape of C.A. alleged in Count Two.

### A. Failure to Object to Jury Instructions

Chancellor asserts that trial counsel's failure to object to the fifth element of the charges of aggravated sexual abuse of a minor and attempted aggravated sexual abuse of a minor—i.e., that the United States and the defendant had stipulated that the residence of the defendant was within Indian Country located in the Northern District of Oklahoma and that they "may thus

accept the fifth element as being proved"—denied Chancellor the chance to have a district court sustain his objection to the jury instruction. He alleges "the missed opportunity to have the objection decided in his favor caused him to have to suffer the consequences of what he asserts are ambiguous jury instructions as to the jurisdictional element." [Dkt. #115 at 6-7]. Chancellor contends the instruction that the parties had stipulated that the residence of the defendant was within Indian Country located in the Northern District of Oklahoma and that the jury "may thus accept the fifth element as being proved," confused the jury because it "set forth that the crime was committed and it was proved." [*Id.* at 7].

The court rejects Chancellor's argument that the instruction was ambiguous. The jury instruction clearly stated that based on the parties' stipulation as to the residence of defendant, the jurors "may… accept the *fifth element* as being proved." [Dkt. #58 at 23, 34] (emphasis added)]. On appeal, the Tenth Circuit found the instructions correctly "commanded the jury to find each of the listed elements beyond a reasonable doubt," that they did not "t[ell] the jury Mr. Chancellor was guilty," nor did they otherwise contain a command to the jury that they "must" accept that "the offenses were true," and that "each disputed instruction charged the jury with determining *each* element of the offense beyond a reasonable doubt, including whether the offenses occurred in the first instance." [Dkt. #98 at 5].

Chancellor's claim that he was denied effective assistance of counsel because of trial counsel's failure to object to the jury instructions lacks merit because the Tenth Circuit found no error in the challenged instructions. Because the issue is without merit, counsel's failure to raise it "does not constitute constitutionally ineffective assistance of counsel." *United States v. Cook,* 45 F.3d 388, 393 (10th Cir. 1995) (citations omitted).

## B. Failure to Investigate/Interview Witness

Chancellor asserts he was denied effective counsel because his trial attorney did not investigate alleged witness Rebecca Ballard, who he claims has personal knowledge of the events of the attempted rape of C.A. He contends Ballard's testimony would have impeached the testimony of C.A. and K.R.H. Specifically, Chancellor states:

> Rebecca Ballard, had she been contacted stated she would have testified at trial that she was present on January 1, 2007, that she was up all night, that C.A. left when the sun came up and that nothing with C.A. happened, and that the defendant (Mr. Chancellor) and another guy were in the living room.

[Dkt. #115 at 13].[1]

In order to prove he was denied effective assistance in this regard, a defendant must "overcome the presumption that [counsel's] decisions were based on trial strategy and were within the 'wide range of professionally competent assistance." *United States v. Haddock,* 12 F.3d 950, 956 n. 1 (10th Cir. 1994) (citing *Strickland*, 466 U.S. at 689-90). "When an ineffective assistance claim centers on a failure to investigate and elicit testimony from witnesses, the petitioner must demonstrate, with some precision, the content of the testimony they would have given at trial." *Martinez v. Tafoya,* 13 Fed. Appx. 873 (10th Cir. 2001) (unpublished) (internal quotations omitted) (citing *Lawrence v. Armontrout,* 900 F.2d 127, 130 (8th Cir. 1990)). Here, although Chancellor's counsel recounts statements Ballard made to him, no affidavit has been filed. Chancellor has failed to demonstrate Ballard was present in Chancellor's house on December 31, 2006, or that she would have testified as represented in his brief. Thus,

---

[1] Counsel for Chancellor, Bill Zuhdi, represented in the Memorandum and Brief in Support of the § 2255 Motion that Ballard made these statements to him during a telephone interview and that Ballard would be signing an affidavit in support of the statements. [Dkt. #115 at 14]. However, no affidavit was ever filed.

Chancellor has not met his burden of establishing Ballard's testimony would have changed the outcome of the trial or that he was prejudiced by trial counsel's allegedly deficient performance.

Additionally, "the adequacy or reasonableness of an attorney's action is necessarily conditioned by the defendant's own action or inaction." *United States v. Miller,* 907 F.2d 994, 998 (10th Cir. 1990). "An attorney's failure to investigate cannot be charged as a claim of 'ineffective assistance of counsel when the essential and foundational information required to trigger such an investigation is withheld from the defendant's attorney by the defendant himself." *Id.* at 999. The government has submitted the affidavit of trial counsel, Todd Hembree, in which he states that he met with Chancellor on numerous occasions and his client informed him of the facts of the case, the prejudice of certain witnesses and a list of all potential witnesses to the alleged incidents. [Dkt. #121, Attachment A, Todd Hembree Affidavit]. Hembree states that during these conversations, Chancellor never informed him of the existence by a potential witness by the name of Rebecca Ballard. [*Id.*].

The court rejects Chancellor's claim that his trial counsel was ineffective for failing to call Rebecca Ballard as a witness.

### IV. Conclusion

For the foregoing reasons, Chancellor's Motion Under U.S.C. § 2255 to Vacate, Set Aside or Correct a Sentence [Dkt. #102] is denied.

ENTERED this 9th day of May, 2012.

_____
GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT